IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TEOFILO C. MATIAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV398 |
| ) | |
| ) | |
| ELON UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action against Defendant Elon University, his former employer, alleging race discrimination in violation of 42 U.S.C. § 1981 ("§ 1981") and 42 U.S.C. § 2000e *et seq.* ("Title VII"). (ECF No. 1 ¶ 1.) Before the Court is Defendant's Motion for Summary Judgment, (ECF No. 19). For the reasons set forth below, Defendant's motion will be granted.

**I.    BACKGROUND**

Plaintiff, a Hispanic male, was hired by Defendant as a Custodian in 1999. (ECF No. 19 ¶ 10; ECF No. 19-1 at 1, 2.) In 2001, Plaintiff was promoted to Sanitation Recycling Worker, in which his responsibilities included pulling trash and recycling from certain buildings and areas. (ECF No. 19-1 at 3–4.) In 2005, Plaintiff was again promoted, this time to Distribution Serviceman. (*Id.* at 4.) His responsibilities included inspecting fire extinguishers and distributing and delivering custodial supplies. (ECF No. 19-3 at 7–8.) According to Plaintiff, following this promotion, he asked his supervisor, Dave Worden, for

a pay raise. (ECF No. 22-9 at 3.) Plaintiff testified that Mr. Worden responded, "You don't know how to do the job. How can I give you a raise? The only thing you know how to do is make tacos." (*Id.* at 3–4.) During Plaintiff's tenure as Distribution Serviceman, he consistently received good performance reviews, (*see* ECF No. 19-4), and his supervisors thought that "he did good work" and that he had a "[s]trong work ethic," (ECF No. 19-2 at 1; ECF No. 19-3 at 9). Plaintiff also served in a supervisory role on multiple occasions, including during inclement weather and during a nine-week period when his direct supervisor was out on sick leave. (ECF No. 22-9 at 5, 30.)

In or before August 2014, Plaintiff's direct supervisor, Wayne Brown, who served as Support Services Supervisor, announced his retirement.[1] (*See* ECF No. 19-2 at 2; ECF No. 22-8 at 2.) Mr. Brown's supervisor, Dave Worden, who was responsible for hiring his successor, testified that he "[got] the word out" about the position to the employees in his department. (ECF No. 19-3 at 4–5, 15.) Mr. Worden interviewed "[r]oughly half a dozen" applicants for the position, although he testified that he was unsure if the position "ever officially opened." (*Id.* at 13, 15.) On August 11, 2014, Mr. Worden recommended Mark Poole, a white male, for promotion to Support Services Supervisor. (ECF No. 1 ¶ 17; ECF No. 22-8 at 2.)

---

[1] The evidence does not reflect the exact date on which Mr. Brown announced his retirement, nor does it reflect exactly when Mr. Worden began soliciting applicants for the Support Services Supervisor position. Mr. Brown testified, however, that he gave "three or four months" notice before he officially retired. (ECF No. 19-2 at 2.) The evidence also shows that Mr. Brown's successor, Mark Poole, was recommended for the available position on August 11, 2014, (ECF No. 22-8 at 2), and assumed the role of Support Services Supervisor in January 2015, (ECF No. 22-15 at 2, 16).

At some point after Mr. Brown's announcement, when Plaintiff attempted to view the job posting for the Support Services Supervisor position through Defendant's internal Human Resources ("HR") database, he learned that the position was not posted. (ECF No. 19-1 at 7.) In October 2014, Plaintiff asked Mr. Brown about the position and was informed that Mr. Worden had already selected a candidate. (*Id.* at 8.) In November 2014, Plaintiff asked Mr. Worden about the position, to which Mr. Worden responded that he had already selected Mr. Poole. (*Id.* at 8–9.) According to Plaintiff, Mr. Worden also made the following remarks: "Why you not happy? You just want some money? You looking to make more money?" and "You guys, Mexicans, you want everything. You just want money." (ECF No. 22-9 at 10, 31.)

Over a year after the promotion decision was made, in February 2016, Plaintiff was accused of sexual harassment by a coworker, Kimberly Ward. (ECF No. 19-8 at 1.) The matter was initially brought to the attention of HR by two supervisors, Donnell Jeffries and Dave Worden. (ECF No. 19-7 at 1.) Ms. Ward complained that Plaintiff had given her gifts and attempted to kiss her on multiple occasions. (ECF No. 19-8 at 2–3.) Carla Ugboro, Associate Director of HR for Employee Relations, conducted an investigation in which she interviewed Plaintiff, Ms. Ward, Mr. Jeffries, Mr. Worden, and six other witnesses. (*Id.* at 1–8.) During Plaintiff's interview, he claimed that he was "set up" by other coworkers who had grudges against him. (*Id.* at 7.) Plaintiff also accused another supervisor, Kevin Bigelow, of engaging in a relationship with a coworker, in violation of company policy. (*Id.* at 7–8.) As a result of the investigation, Ms. Ugboro recommended Plaintiff's termination "based on his behavior and the environment that he created for [Ms. Ward]." (ECF No. 19-9 at 1.) Plaintiff was terminated on February 12, 2016. (*Id.*; ECF No. 19-7 at 36.)

Plaintiff subsequently filed a Complaint, alleging failure to promote based on his Hispanic race in violation of § 1981 and discriminatory termination, also based on race, in violation of Title VII and § 1981. (ECF No. 1 ¶¶ 17, 22.) Defendant has moved for summary judgment on both claims, arguing that "there is no genuine issue of material fact regarding Plaintiff's claims." (ECF No. 19 at 1.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). The role of the court is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

In cases where, as here, the nonmovant bears the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden

4

shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must support its assertions by citing to particular parts of the record, or showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. The judicial inquiry on summary judgment "thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## III. DISCUSSION

### A. Failure to Promote Claim

A plaintiff may prove discriminatory failure to promote under § 1981[2] in one of two ways: (1) by "demonstrating through direct or circumstantial evidence that [unlawful] discrimination motivated the employer's adverse employment decision[;]" or (2) by proceeding under the burden-shifting framework of *McDonnell Douglas*.[3] *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *see also Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Here, Plaintiff proceeds under both methods. (ECF No. 22 at 11, 13.)

Defendant contends it is entitled to summary judgment on Plaintiff's failure to promote claim because Plaintiff can show neither direct evidence of discrimination nor a case for

---

[2] "The same elements are required for failure-to-promote claims alleged under Title VII and § 1981." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.5 (4th Cir. 2004).

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

5

discrimination under the *McDonnell Douglas* analysis. (ECF No. 20 at 10–14; ECF No. 23 at 2–9.) Specifically, Defendant argues that there is no direct evidence of discrimination because any discriminatory remarks allegedly made to Plaintiff by his supervisor, Mr. Worden, fail to "illustrate [the required] nexus between that motive and the adverse employment action." (ECF No. 23 at 3–4 (internal quotation marks omitted).) Further, Defendant argues that Plaintiff can neither prove a prima facie case of unlawful failure to promote nor show that Defendant's nondiscriminatory reason for hiring Mr. Poole was a pretext for discrimination. (ECF No. 20 at 10–14; ECF No. 23 at 5–9.)

Plaintiff, in response, argues that there is evidence of discrimination based on Mr. Worden's discriminatory remarks, which have a nexus with the adverse employment action against Plaintiff. (ECF No. 22 at 11–13.) Plaintiff also argues that, with respect to the *McDonnell Douglas* analysis, his failure to apply for the Support Services Supervisor position in a timely manner should be excused because "Defendant failed to make all eligible employees aware of the Support Services Supervisor job vacancy." (*Id.* at 14.) Further, Plaintiff argues that Defendant's nondiscriminatory reason for promoting Mr. Poole instead of Plaintiff is simply pretext for discrimination. (*Id.* at 15.)

### 1. Direct Evidence of Discrimination

To prove direct evidence of discrimination, a plaintiff must show "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal quotation marks omitted). The statements in question "must have a nexus with the adverse employment action." *Id.* "While isolated statements can constitute direct

evidence of discrimination, the statements must be contemporaneous to the adverse employment action." *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 306 (4th Cir. 2008). Courts have also considered "the context of the statement . . . and the status of the person making the statement." *EEOC v. CTI Global Sols., Inc.*, 815 F. Supp. 2d 897, 906 (D. Md. 2011).

Plaintiff argues that Mr. Worden made four statements that constitute evidence of racial discrimination, (ECF No. 22 at 3–4), as follows:

1. "You don't know how to do the job. How can I give you a raise? The only thing you know how to do is make tacos." This statement was made after Plaintiff inquired about a pay raise following his promotion to Distribution Serviceman in 2005. (ECF No. 22-9 at 3–4.)

2. "You guys, Mexicans, you want everything. You just want money." This statement was made in 2014, when Plaintiff inquired about the Support Services Supervisor position. (*Id.* at 31.)

3. "Why you not happy? You just want some money? You looking to make more money?" and "What the [expletive]? You not happy where you at?" These statements were also made in 2014 when Plaintiff inquired about the Support Services Supervisor Position. (*Id.* at 10.)

4. "All the time you begging for money, Teo. That's the only thing you do. And if you don't drive those expensive Volvos, you shouldn't be begging for money." This statement was made in response to Plaintiff's inquiry about a pay raise. (*Id.* at 12.)

As a preliminary matter, because the third and fourth statements do not include any evidence of racial animus, they will not be considered as direct evidence of racial discrimination. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that Title VII is not a "general civility code" for the workplace (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998))). The first statement, made in 2005, occurred approximately nine years before the contested employment decision, *i.e.* the decision to promote Mr. Poole instead

7

of Plaintiff to Support Services Supervisor. Courts have routinely found that statements made in a shorter time frame were not "reasonably contemporaneous" to the adverse employment action in question. *E.g. McCray*, 263 F. App'x at 303, 306 (holding that statements made two and a half years before termination were not "reasonably contemporaneous" with the termination decision); *Gaines v. McDonald*, 152 F. Supp. 3d 464, 470 (M.D.N.C. 2015) (holding that a statement made approximately five months before termination was not contemporaneous); *but see Arthur v. Pet Dairy*, 593 F. App'x 211, 212, 221 (4th Cir. 2015) (per curiam) (holding that a statement made approximately three weeks before termination "sufficiently tie[d] [the supervisor's] alleged discriminatory intent to the relevant time period").

Mr. Worden's second statement was made in November 2014, approximately three months after the promotion decision was made. (*See* ECF No. 22-9 at 31; ECF No. 22-8 at 2.) As discussed with respect to Mr. Worden's 2005 statement, this latter statement also fails to be sufficiently contemporaneous to serve as direct evidence of discrimination. *See McCray*, 263 F. App'x at 306; *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 484 (D. Md. 2013) (finding no direct evidence of discrimination based on statements "made approximately two months prior to Plaintiff's termination date and in a context unrelated to Plaintiff's employment status"); *Jordan v. Radiology Imaging Assocs.*, 577 F. Supp. 2d 771, 780 (D. Md. 2008) (holding that a statement made "several months after Plaintiff's termination[] was not contemporaneous with the decision to terminate Plaintiff and did not directly relate to that decision"). The Court therefore concludes that Mr. Worden's statements do not constitute direct evidence of discrimination in the decision not to promote

8

Plaintiff.  Plaintiff has thus failed to provide sufficient direct evidence to permit a reasonable juror to find that Defendant's failure to promote Plaintiff was based on his race.

### 2. *McDonnell Douglas* Framework

"The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)).  To establish a prima facie case of discrimination, Plaintiff must establish that "(1) [he] is a member of a protected group, (2) there was a specific position for which [he] applied, (3) [he] was qualified for that position, and (4) [Defendant] rejected [his] application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004).

Once a plaintiff has demonstrated a prima facie case of discrimination, the burden shifts to the defendant to "produce evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Gilmore v. Holder*, 616 F. App'x 546, 547 (4th Cir. 2015) (per curiam) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).  Once the defendant meets its burden of production, "then the presumption created by the plaintiff's prima facie case 'drops out of the picture,' and the burden shifts back to the plaintiff to present evidence from which a reasonable juror could conclude that the reason proffered by the defendant was a pretext for discrimination." *Id.* at 548 (quoting *Hicks*, 509 U.S. at 511).  To meet its burden, the plaintiff must prove "*both* that

9

the reason was false, *and* that discrimination was the real reason." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). "A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Id.* at 559 (quoting *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 259 (4th Cir. 2006)).

The parties do not contest that Plaintiff satisfies the first and fourth elements of the prima facie case: that he is a member of a protected class and that the position was filled by a white applicant, Mr. Poole.[4] (*See* ECF Nos. 20, 22, 23.) Plaintiff has also introduced sufficient evidence from which a reasonable juror could find that Plaintiff meets the third element: that he was qualified for the position. (*See* ECF No. 22-9 at 5, 30 (detailing Plaintiff's experience temporarily serving in supervisory roles on multiple occasions).) Defendant does, however, argue that Plaintiff does not meet the second element of the prima facie case because Plaintiff did not apply for the position before it was filled. (ECF No. 20 at 10–11.) Plaintiff, in response, argues that "Defendant failed to make all eligible employees aware of the Support Services Supervisor job vacancy and that the application requirement should not apply." (ECF No. 22 at 14.)

In the Fourth Circuit, "if [an] employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if [he] had actually applied for a specific position." *Williams*, 370 F.3d at 431. This exception to the application

---

[4] To satisfy the fourth element, Plaintiff "need only show that the position was filled by a white applicant, as he has done." *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

10

requirement only applies if the plaintiff "can show that [he] would have applied had [he] known about [the vacancy]." *Id.* at 432. Specifically, this exception may be applicable in instances where "the company did not follow its own policy" in advertising job vacancies, *id.* at 431, or where the employer used a more informal, word-of-mouth hiring system, *Barnett v. W. T. Grant Co.*, 518 F.2d 543, 549 (4th Cir. 1975); *see also EEOC v. Metal Serv. Co.,* 892 F.2d 341, 349–51 (3d Cir. 1990) (noting that an employer's word-of-mouth hiring practices made it difficult to ascertain which positions were available); *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 797–99 (11th Cir. 1988) (concluding, in part, that the plaintiff established a prima facie case of discriminatory failure to promote where his employer never posted notice of the vacancy and used informal communications during social gatherings to make promotion selections).

The only evidence in the record regarding the manner in which Defendant advertised the job vacancy is Mr. Worden's testimony that he "g[o]t the word out that [Defendant] would be looking to replace [Mr. Brown's] position." (ECF No. 19-3 at 15.) Because Defendant used a word-of-mouth hiring system[5] for the Support Services Supervisor position, Plaintiff may be treated as if he applied for the position, provided he can show that he would have done so, had he been aware of the vacancy. *See Williams*, 370 F.3d at 431, 432. To that end, Plaintiff points to specific evidence showing that he actually attempted to apply for the

---

[5] Both parties, in their briefs, reference portions of Ms. Ugboro's deposition regarding Defendant's policy for posting vacancies. (ECF No. 22 at 14; ECF No. 23 at 6.) Neither party, however, included those portions of Ms. Ugboro's deposition in their filings or any other evidence to show whether Defendant followed its own policies for advertising job vacancies. Accordingly, the Court cannot consider those references or arguments. *See Dash v. Walton*, No. 1:99CV00350, 2000 WL 1229264, at *4 (M.D.N.C. July 17, 2000) ("Because there is no evidence before the Court of [a certain argument], this argument cannot be considered." (citing Fed. R. Civ. P. 56(e))).

11

Support Services Supervisor position by searching the job postings on the HR database and asking Mr. Brown and Mr. Worden about the position. (ECF No. 19-1 at 7–9.) Therefore, based on the evidence, the Court concludes that Plaintiff has satisfied this element of his prima facie case by demonstrating that he would have applied for the Support Services Supervisor position had he known that Defendant was interviewing applicants. Plaintiff has thus established a prima facie case of discrimination. *See Weaks v. N.C. Dep't of Transp.*, 761 F. Supp. 2d 289, 298 (M.D.N.C. 2011) ("The burden to establish a prima facie case of disparate treatment is not onerous." (quoting *Burdine*, 450 U.S. at 253) (emphasis omitted)).

Because Plaintiff has satisfied his burden of establishing a prima facie case of discrimination, Defendant must present evidence of a legitimate, nondiscriminatory reason for selecting an applicant other than Plaintiff. Defendant argues that Mr. Poole was selected for the Support Services Supervisor position "based on his previous supervisory experience and experience maintaining and repairing equipment used for custodial service." (ECF No. 20 at 12.) In support of this reason, Defendant has produced evidence showing that Mr. Poole was qualified for the Support Services Supervisor position. (ECF No. 19-2 at 3; ECF No. 19-3 at 14.) Specifically, the record reflects that:

- Mr. Brown, Mr. Poole's direct supervisor, stated, "[Poole] was hard working. He was real knowledgeable on equipment, basic equipment repairs and stuff, but other than that—he had worked for me a while and he was a good man, hard working, dependable." (ECF No. 19-2 at 3.)

- Mr. Worden, who made the ultimate hiring decision, stated that he selected Mr. Poole based on "[p]revious supervisory experience, equipment maintenance, work ethic, [and] fit." When asked about what type of equipment Mr. Poole had experience with, Mr. Worden responded, "[e]quipment specifically used for custodial service, whether it be vacuums, carpet machines, swing buffers." (ECF No. 19-3 at 14.)

- Mr. Poole's last performance review before his promotion included comments such as, "[Mr. Poole] adjusts well to any changes in job assignments and always has a positive attitude," "[v]ery motivated individual who carries out assignments with little supervision and is willing to take on other jobs if needed," and "[c]ommunicates well with others." (ECF No. 22-15 at 13–14.)

Plaintiff, attempting to show that Defendant's reason is a pretext for discrimination, argues that "his qualifications [were] demonstrably superior." (ECF No. 22 at 15 (citing *Heiko*, 434 F.3d at 261–62).) Evidence reflecting Plaintiff's qualifications includes:

- Mr. Brown remarked that Plaintiff "did good work" and "got along with everybody okay." (ECF No. 19-2 at 1.) Mr. Worden stated that Plaintiff had a "[s]trong work ethic." (ECF No. 19-3 at 9.)

- Plaintiff supervised other sanitation employees during home football games. (ECF No. 22-9 at 5; ECF No. 22-12 at 4 ("[M]ost of the time [Plaintiff] looked after the . . . sanitation group, at the games.")) Plaintiff also supervised six other employees while Mr. Brown was out on sick leave for nine weeks. (ECF No. 22-9 at 5; ECF No. 22-12 at 2.)

- Plaintiff had some experience with equipment repair, as indicated by the repeated suggestions in his yearly performance reviews that he "[c]ontinue to learn equipment repair," specifically vacuum repair. (*E.g.* ECF No. 22-6 at 5, 10, 14, 16, 20, 24, 29, 31, 36, 40.)

This evidence notwithstanding, when a plaintiff fails to show "that his qualifications are demonstrably superior," then "the promotion decision remains vested in the sound business judgment of the employer." *Heiko*, 434 F.3d at 261–62. After reviewing the evidence before the Court in the light most favorable to Plaintiff, the Court finds that Plaintiff has, at best, shown that his "job qualifications [were] similar or only slightly superior to those of [Mr. Poole]." *Id.* at 261. Such a showing is insufficient to establish that Defendant's nondiscriminatory reason for promoting Mr. Poole instead of Plaintiff was a pretext for discrimination. *See id.*; *see also Moore v. Mukasey*, 305 F. App'x 111, 116 (4th Cir. 2008)

13

("[Plaintiff] cannot rely on his qualifications to establish pretext if he asserts that his qualifications are similar or only slightly superior to those of the person ultimately selected for promotion.")  Therefore, Plaintiff has failed to present a genuine issue as to whether Defendant's proffered nondiscriminatory reason for selecting Mr. Poole was a pretext for discrimination.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's failure to promote claim.

### B. Discriminatory Termination Claim

Next, Defendant claims that it is entitled to summary judgment on Plaintiff's discriminatory termination claim because it terminated Plaintiff after an internal investigation found that he created a hostile work environment for a female coworker.  (ECF No. 20 at 16–19.)  Plaintiff argues in response that he did not harass his coworker and that Defendant treated him differently than another employee, Kevin Bigelow, who was the subject of multiple sexual harassment complaints.  (ECF No. 22 at 16–21.)

A discriminatory termination claim under Title VII and § 1981, like a failure to promote claim, may be proven by direct or circumstantial evidence of discrimination, or by using the burden-shifting *McDonnell Douglas* framework.  *See Foster*, 787 F.3d at 249.  Because Plaintiff does not attempt to argue that there is direct or circumstantial evidence of discrimination with regard to his termination, he proceeds under the *McDonnell Douglas* framework.  (ECF No. 22 at 16.)  To establish a prima facie case of discriminatory termination under Title VII and § 1981, Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar

circumstances." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004); *see also Scott v. Health Net Fed'l Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012) (per curiam). If a plaintiff proves a prima facie case of discriminatory termination, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [termination]." *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If the employer meets its burden, the plaintiff must then show that the employer's reason was merely a "pretext for discrimination." *Id.* The plaintiff may do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256.

Although Defendant concedes that Plaintiff can prove the first and third elements of the prima facie case, it argues that Plaintiff cannot meet the second and fourth elements of the prima facie case. (ECF No. 20 at 16.) With respect to the second element, Defendant argues that actions that led to Plaintiff's sexual harassment complaint "made him unqualified for the job." (*Id.*) This argument, however, misses the point. To satisfy this prong, Plaintiff must only show that he satisfactorily performed the duties required of the position. *See Prince-Garrison v. Md. Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (per curiam) (finding that the district court properly held that the plaintiff did not meet the second element because "she consistently received reports of deficient work performance"); *Warren v. Tri Tech Labs., Inc.*, 993 F. Supp. 2d 609, 633–34 (W.D. Va. 2014) (holding that Plaintiff's job performance was not satisfactory due to "missing paperwork, unfinished regulatory paperwork, [and] the changing of processes within the facility without approval"), *aff'd*, 580 F. App'x 182 (4th Cir. 2014). Plaintiff has introduced sufficient evidence to show that he

remained qualified for his position and that his performance was satisfactory. As previously discussed, Plaintiff routinely received performance reviews stating that he "frequently exceed[ed] [the] requirements of [his] position." (*See, e.g.*, ECF No. 19-4 at 10.) Although Defendant introduced evidence showing that Plaintiff was found to have created a hostile work environment for a coworker, it failed to otherwise show that Plaintiff's job performance was not satisfactory. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that he has shown that he was still qualified for his position, thus meeting the second element of the prima facie case.

Defendant has established, however, that Plaintiff cannot meet the fourth element of the prima facie case: that another employee who is not a member of Plaintiff's protected class was retained under apparently similar circumstances. Plaintiff argues that Mr. Bigelow, a supervisor who had "been accused of sexual harassment multiple times by different employees on different occasions," (ECF No. 22 at 17), was not terminated while Plaintiff was terminated "under apparently similar circumstances," *Honor* 383 F.3d at 188; *see* ECF No. 22 at 17. Plaintiff points to two separate sexual harassment investigations into Mr. Bigelow's behavior. First, Mr. Bigelow was the subject of a 2013 HR investigation in response to a sexual harassment and retaliation complaint by a former employee, alleging that Mr. Bigelow fired her after she refused to go out with him. (ECF No. 22-5 at 2.) Although that investigation did not find that Mr. Bigelow had retaliated against the former employee, the HR representative recommended that he receive training "on policies and procedures including sexual harassment" and "assistance with developing his supervisory skills." (*Id.* at 5.) Second, HR investigated the accusations made by Plaintiff in 2016, during Plaintiff's own sexual

16

harassment investigation, that Mr. Bigelow was engaged in a relationship with a coworker in violation of Defendant's policy. (ECF No. 19-12.) The supplementary investigation into Plaintiff's accusations concluded that they "[could not] definitively say" whether the allegations against Mr. Bigelow were true. (*Id.*) Both allegations led to HR investigations, neither of which found that Mr. Bigelow violated Defendant's code of conduct. (*See* ECF No. 22-5 at 5; ECF No. 19-12.)

In contrast to Mr. Bigelow's situation, Defendant's HR investigation into sexual harassment allegations against Plaintiff found that "[Plaintiff] created a hostile work environment for [his coworker]." (ECF No. 19-9 at 1.) Therefore, Plaintiff and Mr. Bigelow are not "similarly situated," as contemplated by the prima facie case test. *See Haywood v. Locke*, 387 F. App'x 355, 360 (4th Cir. 2010) (per curiam) (finding not enough "common features between the individuals to allow [for] a meaningful comparison" (alteration in original) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd on other grounds*, 553 U.S. 442 (2008))). Although Plaintiff attempts to contest the findings of the investigations into Mr. Bigelow's alleged misconduct, (ECF No. 22 at 6–9), the court does not "sit as a super-personnel department weighing the prudence of employment decisions." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (internal quotation marks omitted). Plaintiff has failed to satisfy the fourth element of the prima facie test. Accordingly, summary judgment in favor of Defendant is appropriate as to this claim.[6]

---

[6] Failure to meet one element of the prima facie case is fatal to the claim. *See Haywood*, 387 F. App'x at 360 ("As [Plaintiffs] failed to show their comparator was similarly situated, they failed to make out a prima facie case of discrimination. . . . [Accordingly,] the district court properly granted summary judgment to the defendant.").

Even assuming that Plaintiff could establish a prima facie case, Plaintiff cannot show that Defendant's legitimate nondiscriminatory reason for terminating his employment was a pretext for discrimination. Defendant's stated reason for terminating Plaintiff is that a HR investigation found that he had created a hostile work environment for a coworker, thereby violating Defendant's Staff Manual. (*See* ECF No. 19-9 at 1; ECF No. 22-1 at 2.) To prove that Defendant's reason was a pretext for discrimination, Plaintiff "must show both that the reason advanced was a sham *and* that the true reason was an impermissible one under the law." *Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016) (internal quotation marks omitted).

Plaintiff devotes extensive portions of his brief and deposition to presenting his version of the events that led to his sexual harassment complaint. (*See* ECF No. 22 at 5–6, 17–19; ECF No. 22-9 at 13–24.) Plaintiff further argues that the investigation was "hasty and informal" and was a "gross deviation from the standards set forth in Defendant's own Staff Manual." (ECF No. 22 at 18.) Although Plaintiff questions the thoroughness of Defendant's investigation of Ms. Ward's sexual harassment complaint, "focusing on the quality of internal investigations misses the point." *Cupples v. AmSan, LLC*, 282 F. App'x 205, 210 (4th Cir. 2008). Plaintiff has failed to point to any evidence demonstrating that the real reason for his discharge was discriminatory. The record is devoid of evidence showing that Ms. Ugboro or any HR professional involved in the investigation and termination of Plaintiff were motivated by discriminatory purposes.[7] "If [Defendant's] reason for termination is not forbidden by law,

---

[7] Plaintiff argues that Mr. Worden, Plaintiff's supervisor who allegedly made discriminatory comments towards him in the past, was "instrumental in advancing the sexual harassment investigation." (ECF No. 22 at 18.) Although Mr. Worden (and Donnell Jeffries) initially brought Ms. Ward's complaint against Plaintiff to the attention of HR, there is no evidence that shows that Mr. Worden further influenced Ms. Ugboro's investigation. (*See* ECF No. 19-7 at 1; ECF No. 19-8.)

'it is not [the Court's] province to decide whether the reason was wise, fair *or even correct*, ultimately, so long as it was truly the reason for the plaintiff's termination.'" *Id.* (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). The Court therefore concludes that there is no genuine dispute as to any material fact concerning Defendant's reason for Plaintiff's termination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's wrongful termination claim.

## IV. CONCLUSION

Based on the above, the Court concludes that Defendant has shown that there is no genuine dispute of any material fact regarding Defendant's alleged failure to promote and termination of Plaintiff. Accordingly, summary judgment in favor of Defendant is appropriate as to both claims.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment, (ECF No. 19), is GRANTED, and Plaintiff's claims against Defendant are hereby DISMISSED WITH PREJUDICE.

A Judgment dismissing this action will be entered contemporaneously with this Order. This, the 26th day of November 2018.

/s/ Loretta C. Biggs
United States District Judge